IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| CARMEN PARISI, | § | **FILED: JULY 10, 2008** |
| | § | **08CV3936** |
| Plaintiff, | § | **JUDGE LEFKOW** |
| | § | **MAGISTRATE JUDGE MASON** |
| vs. | § | CIVIL ACTION NO. _____ |
| | § | **AEE** |
| CREDANT TECHNOLOGIES, INC. | § | |
| | § | |
| Defendant. | § | |

## NOTICE OF REMOVAL

Defendant Credant Technologies, Inc. ("Defendant") by and through its attorneys and pursuant to 28 U.S.C. §§ 1332 and 1441, hereby removes Case No2008 L 000465, *Carmen Parisi v. Credant Technologies, Inc.*, pending in the Circuit Court of DuPage County, Illinois, to the United States District Court for the Northern District of Illinois, Eastern Division.   As grounds for removal, Defendant states as follows:

1.      On April 22, 2008, Carmen Parisi ("Plaintiff") filed his Complaint at Law in the Circuit Court of the Eighteenth Judicial District, Dupage County, Illinois, entitled *Carmen Parisi v. Credant Technologies, Inc.*, Cause No. 2008-L-000465 (the "Complaint").   In that Petition, Plaintiff asserts claims for breach of a sales compensation plan agreement, unjust enrichment, violation of the Illinois Sales Representative Act, attorneys' fees in a Wage Action Act and an accounting.

2.      Copies of all process, pleadings, and orders filed by Defendant or served upon Defendant in this action are contained in the Appendix to Removal ("Appendix") attached hereto as Exhibit A.

---

**NOTICE OF REMOVAL – Page 1**

3.      The parties are citizens of different states.  At the time of the filing of this action and the time the cause of action arose, Defendant was, and still is, a corporation formed under the laws of Delaware with its principal place of business in Dallas, Texas.  According to the allegations in his Complaint, Plaintiff is a resident of the State of Illinois who resides in Elmhurst, Illinois.  Therefore, the parties are diverse.

4.      The actual amount in controversy exceeds $75,000, in that, according to his Complaint, Plaintiff seeks actual damages "in excess of $60,000" and an additional, unspecified amount in attorneys' fees.

5.      Based on the complete diversity of citizenship between the parties and the amount in controversy, this Court has original jurisdiction pursuant to 28 U.S.C. § 1332, and removal is proper pursuant to 28 U.S.C. § 1441.

6.      This Notice of Removal is timely because it is filed within thirty (30) days after the receipt by Defendant of papers from which it may be ascertained that this action has become removable.  This Notice is filed within one year of the commencement of this action.

7.      Defendant has filed a copy of this Notice of Removal with the Clerk of the Circuit Court of the Eighteenth Judicial District, DuPage County, Illinois.

WHEREFORE, Defendant gives notice that this action is hereby removed to the United States District Court for the Northern District of Illinois in accordance with the provisions of 28 U.S.C. §1441 *et seq*.


DATED:  July 10, 2008.


**NOTICE OF REMOVAL – Page 2**

Respectfully submitted,

CREDANT TECHNOLOGIES, INC.


By:      /s/  Michael D. Ray
         One of its Attorneys

Michael H. Cramer (ARDC No. 6199313)
Michael D. Ray (ARDC No. 6285109)
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
Two First National Plaza
Twenty-Fifth Floor
20 South Clark Street
Chicago, Illinois 60603-1891
(312) 558-1220
(312) 807-3619 (Fax)


ATTORNEYS FOR DEFENDANT

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney hereby certifies that he caused a copy of the foregoing Notice of Removal to be served by fax and first class mail, postage prepaid this 10th day of July, 2008 upon:

> Karen P. Layng
> Angela P. Obloy
> VEDDER PRICE P.C.
> 222 N. LaSalle Street, Suite 2600
> Chicago, IL  60601-1003

The undersigned attorney further certifies that he caused a copy of the foregoing Notice of Removal to be served by first class mail, postage prepaid this 10th day of July, 2008 upon:

> Clerk
> Circuit Court of the 18th Judicial Circuit—DuPage County
> 505 N. County Farm Road
> Wheaton, IL 60187

/s/ Michael D. Ray

6483533.1

**NOTICE OF REMOVAL – Page 4**

CIRCUIT COURT SUMMONS                                                    3101 (Rev. 5/98)

UNITED STATES OF AMERICA

STATE OF ILLINOIS                                              COUNTY OF DUPAGE

IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT

**CARMEN PARISI**

                                    Plaintiff(s)        CASE NUMBER

                    -vs-                                **2008 L 000465**

**CREDANT TECHNOLOGIES, INC.**

                                    Defendant(s)

                                                        File Stamp Here

## SUMMONS

To each defendant:

You are summoned and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance in the office of the **Clerk of this Court, 505 North County Farm Road, Wheaton, Illinois** within 30 days after the service of this summons, not counting the day of service. **IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF ASKED IN THE COMPLAINT.** Please serve **Credant Technologies, Inc., 15305 Dallas Parkway, Suite 1010, Addison, TX 75001.**

**To the officer:**

This summons must be returned by the officer or other person to whom it was given for service, with endorsement of services and fees, if any, immediately after service. If service cannot be made, this summons shall be returned so endorsed. This summons may not be served later than 30 days after its date.

THIS COPY OF PROCESS WAS
DELIVERED TO YOU ON THE
_____ day of _____
BEN ADAMCIK, CONSTABLE
PCT.3, Dallas County,
By_____ Deputy

Witness: **Chris Kachiroubas**, Clerk of the
Eighteenth Judicial Circuit Court and seal
thereof at Wheaton, Illinois     MAY 0 7 2008
Dated: _____

**CHRIS KACHIROUBAS Circuit Court Clerk**
Clerk of the Eighteenth Judicial Circuit

Name     **Karen P. Layng, Angela P. Obloy**
         **Vedder Price P.C.**
         (Plaintiff or Attorney for Plaintiff)

DuPage Attorney No.:     **88200**

Address:  **222 North LaSalle Street**

City:  **Chicago, Illinois 60601**

Phone:  **(312) 609-7500**

NOTICE: The filing of an appearance or answer
with the Circuit Court Clerk requires a
statutory filing fee, payable at the time of
filing

Date of Service:_____
(To be inserted by officer on copy left with Defendant
or other person.)

CHRIS KACHIROUBAS, CLERK OF THE 18TH JUDICIAL CIRCUIT COURT
WHEATON, ILLINOIS 60189-0707



EXHIBIT
A

## SHERIFF'S RETURN

I certify that I served this summons on defendants as follows:
(Check appropriate box, and complete information below)

☐ (a)  (Individual defendants – personal):
By leaving a copy and a copy of the complaint with each individual defendant personally.

☐ (b)  (Individual defendants – abode):
By leaving a copy and a copy of the complaint at the usual place of abode of each individual defendant with a person of his family, of the age of 13 years or upwards, informing that person of the contents and also by sending a copy of the summons in a sealed envelope with postage fully prepaid, addressed to each individual defendant at his usual place of abode.

☐ (c)  (Corporation Defendants):
By leaving a copy and a copy of the complaint with the registered agent, officer or agent of each defendant corporation.

☐ (d)  (Other services):

☐ (e)  (Unable to serve): By _____, Deputy, Badge No. ____

Name of Defendant _____

Name of Person
Summons given to _____

Sex _____ Race _____ Approx. Age _____

Place of Service _____

_____

Date of Service _____ Time _____

Date of Mailing _____

_____

Name of Defendant _____

Name of Person
Summons given to _____

Sex _____ Race _____ Approx. Age _____

Place of Service _____

_____

Date of Service _____ Time _____

Date of Mailing _____

Sheriff of _____ County

By _____, Deputy

IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT
DUPAGE COUNTY, ILLINOIS

CARMEN PARISI,

        Plaintiff,

v.

CREDANT TECHNOLOGIES, INC.,

        Defendant.

2008L000465

Status Date: 07/21/08

Next Date: 10/08/08

JURY

Assigned Jury Demand

No.

**FILED**

Apr 22 2008 - 13:21 PM

_Chris Kachmarla_

CLERK OF THE
18TH JUDICIAL CIRCUIT
DU PAGE COUNTY ILLINOIS

## COMPLAINT AT LAW

Plaintiff, Carmen Parisi ("Mr. Parisi"), by his attorneys, for his Complaint at Law against

Credant Technologies, Inc. ("Credant") states as follows:

### The Parties

1.    Mr. Parisi is an individual citizen of the State of Illinois who resides in Elmhurst,

Illinois.

2.    Credant is a Delaware corporation with its principal place of business in Addison,

Texas. Credant is in the business of, *inter alia*, providing mobile data security services.

### Jurisdiction and Venue

3.    This Court has personal jurisdiction over Credant pursuant to sections 2-209(1)

and (7) of the Illinois Code of Civil Procedure (the "Code") because this action arises from its

transaction of business within Illinois, and the making or performance of a contract substantially

connected with Illinois.

4.    Venue is proper pursuant to section 2-101 of the Code because the transactions, or

some part thereof, out of which Mr. Parisi's causes of action against Credant arose in DuPage

County, Illinois. In addition, Mr. Parisi has felt the effect of Credant's wrongful activities in

DuPage County, Illinois.

### Allegations Common to All Counts

5.    On or about May 1, 2003, Mr. Parisi began working for Credant as the Vice President of Worldwide Sales, responsible for managing Credant's sales representatives in the Company's worldwide territory.  On or about January 1, 2006, Mr. Parisi became the Vice President of North American Sales, responsible for managing Credant's sales representatives in the Company's North American territory.

6.    For each of the years 2003, 2004, 2005 and 2006, Mr. Parisi and Credant entered into a Sales Compensation Plan Agreement (the "Agreement"), which provided that Credant would pay commissions to Mr. Parisi for any sale "booked" by a customer or partner in Credant's worldwide territory.  The Agreement provided that a sale is considered "booked" upon Credant's receipt of a signed software license agreement and purchase order from the customer/partner, and that commissions will be paid thirty days after the end of the month in which the sale was booked.  A true and correct copy of the form of the 2006 Agreement that was signed by Mr. Parisi is attached hereto as Exhibit 1.

7.    The Agreement further provided that if Credant's worldwide territory met or exceeded its yearly sales quota, Mr. Parisi would receive an additional year-end commission calculated by an accelerating multiplier based on the percentage of sales in excess of his quota. According to the Agreement, Credant's 2006 worldwide sales quota was $13,800,000, and the commission rate schedule was set forth in the Agreement's Schedule A.

8.    The commission rate schedule provided that if Mr. Parisi's 2006 sales were more than $15,180,000 and less than $17,940,000, he would earn a year-end commission at a multiplier of 2, and if his sales were more than $17,940,000 and less than $27,600,000, he would earn a year-end commission at a multiplier of 3.

9.    Upon information and belief, on or about December 15, 2004, Countrywide Home Loans ("Countrywide") entered into a three-year software license agreement with Credant to purchase mobile data security services. Upon information and belief, according to the terms of the software license agreement Hewlett-Packard ("HP") would serve as a reseller to Countrywide for Credant's products and services, and HP was responsible for submitting purchase orders and payments to Credant. Countrywide/HP is in Credant's worldwide territory.

10.    Upon information and belief, Credant received purchase orders and full payments from Countrywide/HP according to schedule for the 2004 and 2005 sales. Mr. Parisi was paid commissions for these sales and was given sales credit toward his year-end commissions.

11.    Upon information and belief, on December 22, 2006, Credant received, according to schedule, a purchase order from HP for the 2006 sale, and it should have been booked on that date.

12.    Upon information and belief, on January 25, 2007, HP made payment in full to Credant for the 2006 Countrywide/HP sale. Upon information and belief, there was no reason that Credant should not have booked this sale.

13.    In or about January 2007, Credent paid Mr. Parisi his December 2006 and year-end commissions, and provided him with a calculation thereof. Although the 2006 Countrywide/HP sale should have been booked on December 22, 2006, Credant failed to pay Mr. Parisi commissions or give him sales credit for it toward his year-end commissions.

14.    Upon information and belief, the year-end commission calculation did not include orders booked by Commontime (another partner in Credant's worldwide territory), either, despite that Credant reported to its board that the Commontime sale was booked in 2006.

15.    In addition, Credant calculated Mr. Parisi's year-end sales at a total of $17,815,324.69, and paid his year-end commission at a multiplier of 2, even though Mr. Parisi met the $17,940,000 (and triple multiplier) threshold even without the 2006 Countrywide/HP and Commontime sales.  Mr. Parisi well exceeded the $17,940,000 threshold including the 2006 Countrywide/HP and/or Commontime sales, and therefore should have been paid at a multiplier of 3.

16.    Thereafter, Mr. Parisi immediately and repeatedly requested that Credant: provide documentation to support its commission calculation; pay him commissions for the 2006 Countrywide/HP sale; give him sales credit for the 2006 Countrywide/HP sale; and pay his year-end commission at a triple multiplier.  To date, Credant has refused.

17.    Mr. Parisi performed all conditions precedent that were required to earn sales credit and commissions on the 2006 Countrywide/HP and Commontime sales, and earn year-end commissions at a multiplier of 3.

18.    Upon information and belief, Credant paid commissions to and gave sales credit for the 2006 Countrywide/HP sale to one of the sales representatives in Mr. Parisi's territory.

19.    Credant breached the Agreement by failing to pay Mr. Parisi all commissions earned pursuant to the Agreement.  As a result of Credant's breach, Mr. Parisi has suffered damages in an amount in excess of $60,000.00.

## COUNT I

### Breach of Sales Compensation Plan Agreement

20.    Mr. Parisi incorporates herein the allegations in paragraphs 1 through 19 above as paragraph 20 of this Count I.

21.    The Agreement constitutes a valid and binding agreement between Credant and Mr. Parisi.

22.    Upon information and belief, on December 22, 2006, the 2006 Countrywide/HP sale should have been booked and Mr. Parisi earned commissions.

23.    Pursuant to the Agreement, commissions were due to Mr. Parisi for the 2006 Countrywide/HP sale on January 31, 2007.

24.    Mr. Parisi performed all conditions precedent that were required to earn sales credit and commissions for the 2006 Countrywide/HP sale.

25.    Upon information and belief, the Commontime sale was booked in 2006.

26.    Upon information and belief, Mr. Parisi performed all the conditions precedent that were required to earn sales credit for the Commontime sale.

27.    In addition, even without the 2006 Countrywide/HP or Commontime sales, Mr. Parisi performed all conditions precedent which were required to receive a year-end commission at a multiplier of 3.

28.    To date, Credant has failed to give commission credit and pay commissions to Mr. Parisi for the 2006 Countrywide/HP sales, and pay his year-end commission at a multiplier of 3.

29.    Credant has failed to give commission credit or pay commissions to Mr. Parisi for the 2006 Commontime sale, and pay his year-end commission at a multiplier of 3.

30.    Credant's failure and refusal to pay Mr. Parisi commissions on the 2006 Countrywide/HP and Commontime sales, or pay his year-end commission at a multiplier of 3 as described above, constitutes a breach of the Agreement.

31.    As a direct and proximate result of Credant's breach of contract, Mr. Parisi has suffered damages in an amount in excess of $60,000.00.

WHEREFORE, Mr. Parisi prays for an Order: (a) entering judgment against Credant and in favor of Mr. Parisi; (b) awarding Mr. Parisi his costs of suit; (c) awarding Mr. Parisi's reasonable attorneys' fees; and (d) for any such other relief as the Court deems appropriate.

## COUNT II

### Unjust Enrichment

### (In The Alternative)

32.    Mr. Parisi incorporates herein the allegations in paragraphs 1 through 19 above as paragraph 32 of this Count II.

33.    Upon information and belief, on December 22, 2006, the 2006 Countrywide/HP sale should have been booked and Mr. Parisi earned commissions.

34.    Pursuant to the Agreement, commissions were due to Mr. Parisi for the 2006 Countrywide/HP sale on January 31, 2007.

35.    Mr. Parisi performed all conditions precedent that were required to earn sales credit and commissions for the 2006 Countrywide/HP sale.

36.    Upon information and belief, the Commontime sale was booked in 2006.

37.    Upon information and belief, Mr. Parisi performed all the conditions precedent that were required to earn sales credit for the Commontime sale.

38.    In addition, even without the 2006 Countrywide/HP or Commontime sales, Mr. Parisi performed all conditions precedent that were required to receive a year-end commission at a multiplier of 3.

39.    To date, Credant has failed to give commission credit or pay commissions to Mr. Parisi for the 2006 Countrywide/HP and Commontime sales, or pay his year-end commission at a multiplier of 3.

40.    Upon information and belief, Credant received full payment from HP and Commontime.

41.    To Mr. Parisi's detriment, Credant has voluntarily and unjustly accepted the benefit of the payment made by HP without properly crediting Mr. Parisi pursuant to the terms of the Agreement, and retention by Credant of that benefit without payment to Mr. Parisi would violate fundamental principles of justice, equity and good conscience.

42.    To Mr. Parisi's detriment, Credant has voluntarily and unjustly accepted the benefit of the Commontime sale without properly crediting Mr. Parisi pursuant to the terms of the Agreement, and retention by Credant or that benefit without payment to Mr. Parisi would violate fundamental principles of justice, equity and good conscience.

43.    As a direct and proximate result of the foregoing, Mr. Parisi has suffered damages in an amount in excess of $60,000.00.

WHEREFORE, Mr. Parisi prays for an Order: (a) entering judgment against Credant and in favor of Mr. Parisi; (b) awarding Mr. Parisi his costs of suit; (c) awarding Mr. Parisi's reasonable attorneys' fees; and (d) for any such other relief as the Court deems appropriate.

### COUNT III

#### Violation of the Illinois Sales Representative Act

44.    Mr. Parisi incorporates herein the allegations in paragraphs 1 through 19 above as paragraph 44 of this Count III.

45.    At all relevant times, Credant was a "principal" as defined by the Illinois Sales Representative Act, 820 ILCS 120/1, et seq. (the "Sales Representative Act").

46.    At all relevant times, Mr. Parisi was a "sales representative" as defined by the Sales Representative Act.

47.    Mr. Parisi resigned from Credent, effective December 31, 2006.

48.    To date, Credant has failed to give commission credit or pay commissions to Mr. Parisi for the 2006 Countrywide/HP and Commontime sales, or pay his year-end commission at a multiplier of 3.

49.    Credant violated the Sales Representative Act by failing to pay Mr. Parisi the commissions due to him after his employment with Credant terminated.

50.    As a direct and proximate result of the foregoing, Mr. Parisi has suffered damages in an amount in excess of $60,000.00.

WHEREFORE, Mr. Parisi prays for an Order: (a) entering judgment against Credant and in favor of Mr. Parisi; (b) awarding Mr. Parisi his costs of suit; (c) awarding Mr. Parisi's reasonable attorneys' fees; and (d) for any such other relief as the Court deems appropriate.

## COUNT IV

### Attorneys Fees in Wage Action Act

51.    Mr. Parisi incorporates herein the allegations in paragraphs 1 through 19 above as paragraph 51 of this Count IV.

52.    Mr. Parisi made a written demand of Credant pursuant to the Illinois Attorneys Fees in Wage Actions Act, 705 ILCS 225/1 et seq., for the amount due to him at least three (3) days before this action was brought. A true and correct copy of the letter and the certified mail receipt are attached as Exhibit 2.

53.    Although the demand letter was received by Credant, no payment has been made.

WHEREFORE, Mr. Parisi prays for an Order (a) entering judgment against Credant and in favor of Mr. Parisi; (b) awarding Mr. Parisi his costs of suit; (c) awarding Mr. Parisi's reasonable attorneys' fees; and (d) for any such other relief as the Court deems appropriate.

## COUNT V

### Accounting

54.     Mr. Parisi incorporates herein the allegations in paragraphs 1 through 19 above as paragraph 54 of this Count V.

55.     Mr. Parisi has requested Credant to fully and fairly account for its calculation of his 2006 commission payment.

56.     All demands by Mr. Parisi for Credant to provide a calculation of Mr. Parisi's 2006 commission payment have been refused, and Credant continues to refuse said demand.

57.     Mr. Parisi has no adequate remedy at law.

WHEREFORE, Mr. Parisi prays for an Order: (a) that an accounting be taken under the direction of the Court; (b) entering judgment against Credant and in favor of Mr. Parisi; (c) awarding Mr. Parisi his costs of suit; (d) awarding Mr. Parisi's reasonable attorneys' fees; and (e) for any such other relief as the Court deems appropriate.

Respectfully submitted,

CARMEN PARISI

By: _____
        One of His Attorneys

Karen P. Layng
Angela P. Obloy
Vedder Price P.C.
222 North LaSalle Street, Suite 2600
Chicago, IL 60601-1003
(312) 609-7500
Firm ID No. 88200
Dated: April 21, 2008

IMAGED 20080423

1

I
M
A
G
E
D

2008004213

## 2006 Sales Compensation Plan
## Credant Technologies, Inc.

### Vice President North American Sales – (VP)  Carmen Parisi

This sales compensation plan ("Plan") is designed to motivate you to meet and exceed your assigned objectives while abiding by the rules established in this Plan.

The Plan Administrators are the Vice President WW Sales & Field Operations, the CFO, and the Vice President Operations. Their decisions on any question regarding intent, interpretation or administration of the Plan shall be final and binding.

### Plan Term

The Term of the Plan is retroactive beginning January 1, 2006 through December 31, 2006.

### Plan Discontinuance/Modification

While CREDANT expects to continue the Plan throughout the Term, it reserves the right to discontinue the Plan at any time upon reasonable notice to all personnel covered under the Plan. Under no circumstance may this Plan be amended or modified without written approval from either Plan Administrators. Sales personnel covered under the Plan will be advised in writing of any amendments and/or modifications made to the Plan by the Plan Administrators.

### Quota Assignment, Sales Territory, and Bonus

In order for Credant to achieve its business objectives, a Quota and a Sales Territory are assigned for the Term of the Plan. The Quota per Schedule "A" is assigned with the intent of reflecting the revenue goals for 2006. The Sales Territory is defined in the Territory Agreement per Schedule "B". Credant reserves the right to adjust the Quota and/or Sales Territory component throughout the Plan term as it relates to the equitable payment of commissions.

*PLEASE NOTE: Your 2006 Compensation Schedule is based on Credant's 2006 Bookings Plan of $13,800,000. Any changes to the revenue plan may affect your total variable compensation and you will be advised of any such changes to the revenue plan per the Plan Discontinuance/Modification provision listed above.*

### Participation and Eligibility

The right to participate in the Plan will automatically cease upon termination of employment with Credant, be it initiated by you or Credant. Accordingly, in order to be eligible for compensation for any sale, you must be employed by Credant in a sales position at the time the sale is booked, as defined herein. In the event of termination of employment and one or more booked order(s) is/are still outstanding and commissions have not yet been paid, you will be eligible for compensation after the receipt of payment from the customer(s). The right to participate in Club or other sales activities or contests will also automatically cease upon termination of employment.

## Commission Earned and Paid on Booked Software Revenue

Commission will be deemed earned when the associated software revenue is booked by CREDANT, and in accordance with Schedule "A" and the additional terms described in this Plan. Earned commissions will be paid thirty days after the end of the month in which the revenue was booked, unless otherwise indicated. For example, commissions earned for revenue booked June 10 will be paid no later than July 31, provided there are no extenuating or unusual circumstances. The amount of commission earned and/or the timing of the commission payment for a booked software order may change if it deviates from the following definitions of booked software revenue:

1. All one-time charge (OTC) server software and annual license charge client software qualifies as booked software revenue (up to a maximum of three years for annual licenses so long as such annual licenses are pre-paid up front by the customer). The initial first year pre-paid Software support (maintenance) fees do qualify as booked software revenue. Commission will not be paid on Support & Maintenance renewals or annual/subscription License renewals. Client Services performed by CREDANT and pre-approved by the VP of Sales will not count as earned commission, and do not qualify as booked software revenue.
2. Software revenue is considered booked upon the receipt of both of the following items: a) a signed software license agreement from the customer and b) receipt of a purchase order (PO). Note: Revenue is never considered booked under letters of intent, verbal commitments, or other non-binding agreements.
3. The order must contain pricing (based on the then current CREDANT price list) and Generally Available (GA) products only, and must not contain any conditions, contingent liabilities, or commitments to future products or enhancements. All pricing must be approved in advance by the VP of Sales.
4. In the event that a customer has an invoice outstanding or overdue from a previously booked order, and that same customer places a new order, the new order will not be considered booked until revenue from both orders is collected, with collection defined as receipt of payment.
5. Future years of maintenance included in a deal will be deducted from booked revenue in accordance with standard accounting practices.
6. Terms and conditions must be standard. The following are examples of terms that may delay the timing of when bookings credit will be given on a deal:
   a. Payment terms beyond net 30 days.
   b. Credit worthiness of the customer.
   c. Acceptance criteria.
   d. Other contingencies.
7. Royalty fees will be deducted from the total net booked revenue of any deal unless otherwise stipulated by a promotional plan approved by the Plan Administrators. The individual receives full booked credit for an order less associated royalties, as long as pricing is standard.

8. When a referral partner is engaged, any/all referral fees paid to the partner will be deducted from the total booked software revenue of the deal.
9. The value of any Professional services included in the license and maintenance fees from a customer will be deducted from the total net booked revenue of any deal.

## Commission Chargeback

All commissions paid will be charged back to all individuals who received commissions from the order under the circumstances below. The charge back will be in the same amount as originally paid. Generally, charge backs will be offset against future commissions. However, if the charge back exceeds estimated future commissions, then Credant will seek repayment of charged back commissions from the employees.

1. Receipt of cancellation notice of an order.
2. A receivable is over 90 days past due and no previous special payment arrangements have been made and approved by the CFO.
3. Any terms or conditions are discovered that make the order unacceptable to Credant (i.e. side letters or verbal agreements).

## Discounts

Credant's policy is that the following services are NOT discountable without the prior approval of the Plan Administrators or the CEO:

1. Maintenance
2. Training
3. Professional Services
4. Installation Services

## Arbitration

Any dispute or controversy arising out of or relating to any interpretation, construction, performance or breach of this Compensation Plan shall be settled by arbitration to be held in Dallas, Texas in accordance with the rules then in effect of the American Arbitration Association. The arbitrator may grant injunctions or other relief in such dispute or controversy. The decision of the arbitrator shall be final, conclusive and binding on the parties to the arbitration. Judgment may be entered on the arbitrator's decision in any court having jurisdiction. The Company and employee shall each pay one-half of the costs and expenses of such arbitration and each party shall separately pay its counsel fees and expenses.

## Responsibilities

It is your responsibility to audit your commission statements to ensure accuracy and completeness and to report any error within thirty (30) days after the date of the statement, after which commission adjustments for such errors may not be made. If your employment terminates and the commission balance is negative at the time of termination, any payments due an employee, including but not limited to, commissions, recoverable draws, salaries, bonuses, and expenses, may be withheld and applied against this negative balance. Any negative balance remaining is due to Credant upon termination.

In addition, Credant reserves the right to withhold any commission and/or bonus that may be due at termination for up to 120 days after termination in order to allow Credant to make any necessary adjustments to your commission and/or bonus due to changes or cancellations on any customer's orders previously booked that may occur after the date of termination. In no event are you entitled to receive any commission and/or bonus for any customer order booked by Credant after the date of termination.

The undersigned has read, understood, and agreed to be bound by all the terms and conditions contained in this Compensation Plan and Schedules A-C:

**Carmen Parisi – Vice President North American Sales**

**Signature:** _____        **Date:** _____

**Robert Heard - CEO:** _____        **Date:** _____

## Schedule A: Compensation Schedule
(All amounts referenced herein are in US currency)

## Compensation Categories

As a Vice President, you will be compensated in the following manner:

| | |
|---|---|
| Software License Commission @ 100% of quota | $150,000 |
| Bonus for Quarterly Attainment – ($6,250 per Qtr.) | $ 25,000 |
| Bonus for Quarterly Accuracy – ($6,250 per Qtr.) | $ 25,000 |
| Total Potential Annual Variable Earnings at 100% achievement | $200,000 |

Additional Earnings Potential Includes:

- Commission on Bookings above $13.8M Quota – see % below

## 2006 Booked Revenue Quota (January 1 – December 31)

Total Revenue Quota: $13,800,000

## Achievement of Quota

Commission will be earned for revenue booked for the sale of licenses of CREDANT products that are on the Credant Technologies then current price list per the following schedule.

## Commission Rates – Total Revenue Bookings

| Sales | % of Plan | Accelerator | Accelerated % | Commission Paid | Commission Rate |
|---|---|---|---|---|---|
| 4,600,000 | 33.33% | 0.5 | 16.67% | $25,000 | 0.54% |
| 5,520,000 | 40.00% | 0.5 | 20.00% | $30,000 | 0.54% |
| 5,750,000 | 41.67% | 0.5 | 20.83% | $31,250 | 0.54% |
| 6,900,000 | 50.00% | 0.5 | 25.00% | $37,500 | 0.54% |
| 8,050,000 | 58.33% | 0.5 | 29.17% | $43,750 | 0.54% |
| 8,280,000 | 60.00% | 0.5 | 30.00% | $45,000 | 0.54% |
| 9,200,000 | 66.67% | 0.5 | 33.33% | $50,000 | 0.54% |
| 9,660,000 | 70.00% | 1 | 70.00% | $105,000 | 1.09% |
| 10,350,000 | 75.00% | 1 | 75.00% | $112,500 | 1.09% |
| 11,040,000 | 80.00% | 1 | 80.00% | $120,000 | 1.09% |
| 11,500,000 | 83.33% | 1 | 83.33% | $125,000 | 1.09% |
| 12,420,000 | 90.00% | 1 | 90.00% | $135,000 | 1.09% |
| 12,650,000 | 91.67% | 1 | 91.67% | $137,500 | 1.09% |
| 13,800,000 | 100.00% | 1 | 100.00% | $150,000 | 1.09% |
| 14,490,000 | 105.00% | 1 | 105.00% | $157,500 | 1.09% |

| 14,950,000 | 108.33% | 1 | 108.33% | $162,500 | 1.09% |
|---|---|---|---|---|---|
| 15,180,000 | 110.00% | 2 | 120.00% | $180,000 | 1.19% |
| 15,870,000 | 115.00% | 2 | 130.00% | $195,000 | 1.23% |
| 16,100,000 | 116.67% | 2 | 133.33% | $200,000 | 1.24% |
| 17,250,000 | 125.00% | 2 | 150.00% | $225,000 | 1.30% |
| 17,940,000 | 130.00% | 3 | 190.00% | $285,000 | 1.59% |
| 20,700,000 | 150.00% | 3 | 250.00% | $375,000 | 1.81% |
| 22,770,000 | 165.00% | 3 | 295.00% | $442,500 | 1.94% |
| 23,000,000 | 166.67% | 3 | 300.00% | $450,000 | 1.96% |
| 24,150,000 | 175.00% | 3 | 325.00% | $487,500 | 2.02% |
| 25,530,000 | 185.00% | 3 | 355.00% | $532,500 | 2.09% |
| 27,600,000 | 200.00% | 4 | 500.00% | $750,000 | 2.72% |
| 28,750,000 | 208.33% | 4 | 533.33% | $800,000 | 2.78% |
| 29,670,000 | 215.00% | 4 | 560.00% | $840,000 | 2.83% |
| 31,050,000 | 225.00% | 4 | 600.00% | $900,000 | 2.90% |
| 32,430,000 | 235.00% | 4 | 640.00% | $960,000 | 2.96% |
| 34,500,000 | 250.00% | 4 | 700.00% | $1,050,000 | 3.04% |
| 40,250,000 | 291.67% | 4 | 866.67% | $1,300,000 | 3.23% |
| 41,400,000 | 300.00% | 4 | 900.00% | $1,350,000 | 3.26% |

Until the 4th Quarter of 2006, the accelerator is capped at "2". Examples of how Commissions are calculated are illustrated below:

| Quarterly Quota | Quota | Commission Opportunity |
|---|---|---|
| Q1: | 2,500,000 | 27,174 |
| Q2: | 3,250,000 | 35,326 |
| Q3: | 3,250,000 | 35,326 |
| Q4: | 4,800,000 | 52,174 |
| Total | 13,800,000 | 150,000 |

**Mid-year Example:**
June (Q2)

| | | |
|---|---|---|
| YTD company quota | 5,750,000 | |
| YTD achievement: | 7,500,000 | |
| Percent achievement: | 130.43% | |
| Accelerator at 130%: | 3 | from above |
| Accelerator cap (until Q4) | 2.0 | |
| Incentive base thru Q2: | 62,500 | |
| Amt. of achievement over 100% | 30% | |
| Capped Accelerator (2 x 30%) | 60% | |
| 100% + 60% = | 160% | |
| Incentive x 160% | $100,000 | |
| $100,000 - YTD pmts = | Q2 payment | |

**End of year Example:**
December (Q4)

| | | |
|---|---|---|
| YTD company quota | 13,800,000 | |
| YTD achievement: | 17,250,000 | |
| Percent achievement: | 125.00% | |
| Accelerator at 125%: | 2.0 | from above |
| Incentive base thru Q4: | 150,000 | |
| Amt. of achievement Over 100% | 25.0% | |
| Accelerator 2.0 x 25% | 50.0% | |
| 100% + 50% = | 150.0% | |
| $150,000 x 150% = | $225,000 | |
| $212,500 - YTD pmts = | Q4 payment | |

Commission will only be earned for revenue booked from customers *headquartered* in the Territory Agreement (TA), see Schedule "B". As a general rule, booked software license revenue counts towards quota fulfillment and, therefore, contributes towards the Club qualification and towards commission accelerators or other sales incentives that may be introduced.

**Bonus Based on Quarterly Attainment**

You will be eligible to receive a quarterly bonus of $6,250. It will be based upon achieving 100% of the following bookings goals each quarter:

| | QRTLY Booking $ | % |
|---|---|---|
| 1Q06 | $2,500,000 | 18% |
| 2Q06 | $3,250,000 | 24% |
| 3Q06 | $3,250,000 | 24% |
| 4Q06 | $4,800,000 | 35% |
| Total | $13,800,000 | 100% |

**Bonus Based on Quarterly Accuracy**

You will be eligible to receive a quarterly bonus of $6,250. It will be based on the Company achieving its quarterly "Commit" number (within + or – 10%) which is submitted as part of the pipeline forecast in the second week of each quarter.

**Approved Value-Added Resellers**

When an order is booked by an approved Credant Technologies Reseller for an account that is on your Territory Agreement, the net revenue recognized by CREDANT will be credited towards quota in the same manner as all other quota sales. The order will count towards 100% Club qualification, commission accelerators and other sales incentive contests that may be introduced. CREDANT reserves the right to make additions and/or deletions to the approved list of partners.

## Approved Referral Partners

When a booked order originated as a registered lead from an approved Referral Partner, commission will be based on the amount of the order less any referral fee that must be paid to the Referral Partner. The VP of WW Sales must have approved the lead in advance and the lead must have been registered in the CREDANT Referral Partner Program through the Channel Sales organization for the partner to be eligible for a referral fee. The net revenue recognized by CREDANT, after deducting the referral fees, will count towards quota fulfillment and, therefore, also contribute towards Club qualification, commission accelerators and other sales incentive contests that may be introduced. CREDANT reserves the right to make additions and/or deletions to the approved list of partners.

19

## Schedule B: Territory Agreement (TA)

**Name:** Carmen Parisi

**Territory:** North American Direct Sales

It is recognized that the TA may change from time to time, and as such, any amendments to the TA are deemed to be part of the Plan. Any such amendments must be signed and dated by you and the VP of WW Sales & Field Operations and the CEO.

## Schedule C: Compensation Summary

| Product/Service | Booked Quota Relief | Commission Notes |
|---|---|---|
| Individual Sales – One-Time-Charge SW (including pilots) | Yes | OTC software license revenue contributes towards total booked quota. |
| Individual Sales – Annual license SW (including pilots) | Yes | Annual software license revenue contributes towards total booked quota. |
| Initial Pre-paid Software support (Maintenance) Sales | Yes | 1st Year software support revenue will contribute towards total booked quota and Club nomination.  Additional years pre-paid by the customer do not contribute towards booked quota. |
| Professional Services | Yes | Installation services do contribute to total booked quota. |
| Renewals | Yes | Renewals do count towards total booked quota. |



22

**VEDDERPRICE**

VEDDER, PRICE, KAUFMAN & KAMMHOLZ, P.C.
222 NORTH LASALLE STREET
CHICAGO, ILLINOIS 60601
312-609-7500
FAX: 312-609-5005

CHICAGO • NEW YORK CITY • WASHINGTON, D.C. • ROSELAND, NJ

KAREN P. LAYNG
312-609-7891
kplayng@vedderprice.com

April 10, 2008

**VIA CERTIFIED MAIL**
**RETURN RECEIPT REQUEST**

Mr. Doug Linebarger
Credant Technologies, Inc.
15303 Dallas Parkway
Suite 1420
Addison, Texas 75001

Re:    Carmen Parisi & Credant Technologies, Inc.

Dear Mr. Linebarger:

Carmen Parisi hereby demand payment of $60,000 in commissions due and owing to him by Credant Technologies, Inc. ("Credant"). If payment is not made to Mr. Parisi within three days of your receipt of this letter, please be advised that Mr. Parisi intends to file a lawsuit against Credant including claims for these commissions and reasonable attorney's fees under the Illinois Attorneys Fees in Wage Actions Act.

Very truly yours,

Karen P. Layng

KPL/cmin

CHICAGO/#1772648.1

23

**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com

**OFFICIAL USE**

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

MERCHANDISE MART STA CHICAGO IL
Postmark Here
APR 10 2008

Sent To: Mr. Doug Linebarger
Credant Technologies, Inc.
Street, Apt. No.; or PO Box No. 15303 Dallas Parkway, Suite 1420
City, State, ZIP+4 Addison, Texas 75001

PS Form 3800, June 2002                    See Reverse for Instructions

7003 1680 0002 0590 6414

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Mr. Doug Linebarger
Credant Technologies, Inc.
15303 Dallas Parkway, Suite 1420
Addison, Texas 75001

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _Meagan Leach_     ☐ Agent  ☐ Addressee

B. Received by (Printed Name): Meagan Leach     C. Date of Delivery 4-14-08

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

3. Service Type
☒ Certified Mail     ☐ Express Mail
☐ Registered          ☐ Return Receipt for Merchandise
☐ Insured Mail        ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)     ☐ Yes

2. Article Number
(Transfer from service label)     7003 1680 0002 0590 6414

PS Form 3811, August 2001     Domestic Return Receipt     102595-02-M-1540

**IN THE CIRCUIT COURT FOR THE 18TH JUDICIAL CIRCUIT
DUPAGE COUNTY, ILLINOIS**

| | | |
|---|---|---|
| Carmen Parisi, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2008 L 000465 |
| | ) | |
| Credant Technologies, Inc. | ) | `08CV3936` |
| | ) | `JUDGE LEFKOW` |
| Defendant. | ) | `MAGISTRATE JUDGE MASON` |
| | ) | |
| | ) | |

**NOTICE OF FILING--NOTICE OF REMOVAL**

**PLEASE TAKE NOTICE** that on July 10th, 2008, Defendant Credant Technologies, Inc. caused to be filed the attached NOTICE OF REMOVAL removing this action to the United States District Court for the Northern District of Illinois, Eastern Division.

CREDANT TECHNOLOGIES, INC.


By: s/  Michael D. Ray
        One of its Attorneys


Michael H. Cramer (6199313)
Michael D. Ray (6285109)
OGLETREE, DEAKINS, NASH,
        SMOAK & STEWART, P.C.
Two First National Plaza
Twenty-Fifth Floor
20 South Clark Street
Chicago, Illinois 60603-1891
(312) 558-1220


Dated:  July 10, 2008

### CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that he caused a copy of the foregoing Notice of Filing / Notice of Removal to be served by fax and first class mail, postage prepaid this 10th day of July, 2008 upon:

> Karen P. Layng
> Angela P. Obloy
> VEDDER PRICE P.C.
> 222 N. LaSalle Street, Suite 2600
> Chicago, IL  60601-1003

The undersigned attorney further certifies that he caused a copy of the foregoing Notice of Filing Notice of Removal to be served by first class mail, postage prepaid this 10th day of July, 2008 upon:

> Clerk
> Circuit Court of the 18th Judicial Circuit—DuPage County
> 505 N. County Farm Road
> Wheaton, IL  60187

/s/ Michael D. Ray

6483540.1