THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CARMEN PARISI., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CREDANT TECHNOLOGIES, INC. | ) | |
| | ) | Case No. 08CV03936 |
| Defendant. | ) | |
| | ) | Judge Lefkow |
| | ) | Magistrate Judge Mason |
| | ) | |
| | ) | |

**DEFENDANT'S MOTION TO DISMISS PURSUANT TO
FED. R. CIV. P. 12(B)(1), 12(B)(3), and 12(B)(6)**

Now comes Defendant Credant Technologies, Inc., ("Defendant" or "Credant"),
by and through its attorneys, stating as follows in support of its Motion to Dismiss:

1. On April 22, 2008, Plaintiff Carmen Parisi ("Parisi" or "Plaintiff") filed suit
against Credant Technologies, Inc. ("Defendant") in state court in DuPage
County, Illinois based upon the provisions of a Sales Compensation Plan,
which is attached to the Complaint as Exhibit 1.

2. Defendant timely removed the matter to the United States District Court for
the Northern District of Illinois, and the case was assigned Case No.
08CV03936.

3. The Sales Compensation Plan attached to the Complaint contains an
arbitration clause which covers "[a]ny dispute or controversy arising out of or

relating to any interpretation, construction, performance, or breach of this Compensation Plan…." Complaint, Ex.1, p.3.

4. All of the claims asserted in the Complaint are covered by the arbitration provision set forth above. Accordingly, this Court lacks jurisdiction pursuant to Fed. R.Civ. P. 12(b)(1) and dismissal is warranted. In the alternative, Defendant requests that this matter be stayed so that it may pursue a Petition to Compel Arbitration in the United States District Court for the Northern District of Texas.

5. In addition, since the arbitration provision sets Dallas, Texas as the situs for the arbitration, dismissal is warranted pursuant to Fed. R. Civ. P.12(b)(3) because this Court lacks the power to compel arbitration outside of its own District.

6. In the alternative, Defendant requests that this matter should be transferred to the United States District Court for the Northern District of Texas pursuant to 28 U.S.C. §1404(a).

7. Lastly, Count III fails to state a claim under the Illinois Sales Representative Act because Plaintiff was not an independent contractor, and must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

Accordingly, Defendant respectfully requests that Plaintiff's Complaint be dismissed in its entirety.

Respectfully submitted,


Credant Technologies, Inc., *Defendant*


By:  s/  Michael D. Ray
      One of Their Attorneys

Michael H. Cramer (IL ARDC No. 6199313)
Michael D. Ray ( IL ARDC No. 6285109)
OGLETREE, DEAKINS, NASH,
  SMOAK & STEWART, P.C.
Two First National Plaza
Twenty-Fifth Floor
20 South Clark Street
Chicago, Illinois 60603-1891
(312) 558-1220


August 5, 2008

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on August 5, 2008, he caused to be electronically filed the foregoing Motion to Dismiss via the Court's ECF system. Notice of this filing will be sent by operation of that system to:

>Karen P. Layng
>Angela Obloy
>Vedder Price, P.C.
>222 N. LaSalle St.
>Chicago, IL 60601
>kplayng@vedderprice.com
>aobloy@vedderprice.com

>s/ Michael D. Ray

6554493.1 (OGLETREE)

THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CARMEN PARISI., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CREDANT TECHNOLOGIES, INC. | ) | |
| | ) | Case No. 08CV03936 |
| Defendant. | ) | |
| | ) | Judge Lefkow |
| | ) | Magistrate Judge Mason |
| | ) | |
| | ) | |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO
DISMISS PURSUANT TO
FED. R. CIV. P. 12(B)(1), 12(B)(3), and 12(B)(6)**

Now comes Defendant Credant Technologies, Inc., ("Defendant" or "Credant"),

by and through its attorneys, stating as follows in support of its Motion to Dismiss:

I.    **INTRODUCTION**

Plaintiff CARMEN PARISI ("Parisi" or "Plaintiff") is a former employee of

Defendant CREDANT TECHNOLOGIES, INC. ("Credant" or "Defendant"). Complaint

¶5. Parisi has filed a five-count Complaint alleging state law claims against Credant

related to the 2006 Sales Compensation Plan, which is attached to the Complaint at

Exhibit 1. More specifically, Count I alleges breach of that agreement, Count II alleges

unjust enrichment (in the alternative), Count III alleges a violation of the Illinois Sales

Representative Act, Count IV contains a claim for attorneys' fees, and Count V is a request for an accounting.

Parisi cannot pursue his claims before this Court because he has agreed to submit such claims to arbitration. On August 4, 2008, Defendant's counsel contacted Plaintiff's counsel to determine if they had an objection to proceeding to arbitration as set forth in the Compensation Plan. That next day, Plaintiff's counsel responded that they wished to preserve an objection to proceeding to arbitration. Accordingly, Defendant now moves to dismiss Parisi's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(3) based on the arbitration provision of that agreement. In the alternative, Defendant seeks a transfer of this matter to the U.S. District Court for the Northern District of Texas. Lastly, Defendant seeks dismissal of Count III because, even if Illinois law applies, it fails to state a claim on its face pursuant to Fed. R. Civ. P. 12(b)(6).

## II.    FACTUAL BACKGROUND

### A.    The Parties

Defendant Credant is a corporation based in Addison, Texas which provides mobile data security services. Complaint ¶2.

Plaintiff Parisi was employed by Credant from on or about April of 2003 until he later left Credant's employ. Complaint ¶¶5; Linebarger Dec. ¶3.[1]

### B.    The Agreement to Arbitrate

Parisi attached a "true and correct copy of the form of the 2006 Agreement that Parisi signed" to the Complaint as Exhibit 1. That attachment contains a mandatory arbitration provision which provides:

---

[1] Attached to this Memorandum as Attachment 1 is the declaration of Doug Linebarger, General Counsel of Credant, with attachments.

**Arbitration**

Any dispute or controversy arising out of or relating to any interpretation, construction, performance or breach of this Compensation Plan shall be settled by arbitration to be held in Dallas, Texas in accordance with the rules then in effect of the American Arbitration Association. The arbitrator may grant injunctions and other relief in such dispute or controversy. The decision of the arbitrator shall be final, conclusive and binding on the parties to the arbitration. Judgment may be entered on the arbitrator's decision in any court having jurisdiction. The Company and employee shall each pay one-half of the costs and expenses of such arbitration and each party shall separately pay its counsel fees and expenses.

Compl., Ex. 1, p.3.

## III.     ARGUMENT

### A.     This Court Lacks Subject Matter Jurisdiction Based Upon the Arbitration Provision of the Sales Compensation Plan and Should Be Dismissed

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.* ("FAA"), mandates

that arbitration agreements "shall be valid, irrevocable and enforceable, save upon such

grounds as exist at law or in equity for the revocation of any contract." *See* 9 U.S.C. §2.

Additionally, Section 3 of the FAA provides:

Section 3. Stay of proceedings where issue therein referable to arbitration

If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. §3.

The United States Supreme Court has repeatedly endorsed the FAA. In *Moses H.*

*Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1 (1983), the Supreme

Court held, "The [FAA] establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Id*. at 24-25. Thus, in considering a party's request to arbitrate a dispute, such request "should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute". *See Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960); *see also AT&T Technologies, Inc. v. Communication Workers of America*, 475 U.S. 643, 650 (1986).

This presumption in favor of arbitration is no less strong when the agreement to arbitrate arises in the employment setting. Thus, in *Perry v. Thomas*, 482 U.S. 483, 490 (1987), the Supreme Court held that mandatory pre-dispute arbitration agreements requiring employees to arbitrate employment-related disputes must be "rigorously enforced," even with regard to statutory claims. *See also Gilmer v. Interstate/Johnson-Lane Corp.*, 500 U.S. 20, 31 (1991) (arbitration offers both employers and employees advantages over litigation including "simplicity, informality and expedition").

This Court has enforced arbitration agreements on multiple occasions. *See, e.g., Gatlin v. Criscione*, 2008 WL 2745956 (N.D. Ill. 2008) (Lefkow, J.) (granting motion to compel arbitration); (Lefkow, J.); *Tarrson v. BLC Partners, LP*, 2002 WL 31095174 (N.D. 2002) (Lefkow, J.) (granting stay of litigation for defendants to seek order compelling arbitration from district court located in the forum specified in the arbitration clause). Indeed, in *Shipp v. XA, Inc.*, 2006 WL 2583720 (N.D.Ill. 2006), this Court granted a motion to compel arbitration where, much like here, the complaint contained

claims for breach of a commissions agreement and claims under the Illinois wage laws. *See also LCA, Inc. v. Sharp Electronics Corp.*, 2000 WL 1222044 (N.D. Ill. 2000) (Conlon, J.) (granting motion to compel arbitration based on sales representative agreements). Furthermore, in *Shipp*, this Court dismissed the Complaint (as opposed to staying the matter) because all of the plaintiff's claims were subject to arbitration. *See Shipp,* 2006 WL 2583720 at *8 ("Because all of [Plaintiff's]claims are subject to arbitration, retaining jurisdiction and staying the action will serve no purpose.").

Here, all of Parisi's claims are covered by the broad arbitration provision in the Sales Compensation Plan. Indeed, the arbitration provision covers "any dispute or controversy arising out of or relating to any interpretation, construction, performance or breach of this Compensation Plan…" Compl. Ex. 1, p.3.

Because Parisi's claims fall within the scope of the arbitration provision, this Court lacks subject matter jurisdiction pursuant to Fed. R.Civ. P. 12(b)(1) and the Complaint should be dismissed. *See Shipp*, 2006 WL 2583720. In addition, as set forth in the FAA, courts lack power to compel arbitration outside of their own District. *See* 9 U.S.C. §4. Because this Court lacks the power to compel arbitration outside of this District and all claims are covered by the arbitration provision, this matter should be dismissed pursuant to Fed. R. Civ. P. 12(b)(3) as well. Indeed, in *Continental Casualty Corp. v. American National Insurance Company*, 417 F.3d 727 (7th Cir. 2005), the Court held that where the contract at issue contains a clause requiring arbitration in other districts, dismissal is the proper remedy under Fed. R. Civ. P. 12(b)(3). *Id.* at 733.[2]

---

[2] In the event that the Court declines to dismiss this action, Defendant requests that this case be stayed so that Defendant may pursue a Petition to Compel Arbitration in the U.S. District Court for the Northern District of Texas pursuant to 9 U.S.C. §4.

Thus, this matter should be dismissed in its entirety under Fed. R. Civ. P. 12(b)(1) and 12(b)(3) pursuant to the arbitration provision.

**B.    Alternatively, Plaintiff's Complaint Should Be Dismissed/Transferred Due to Improper Venue.**

As discussed above, this case should be dismissed based on the arbitration provision in the Sales Compensation Plan.  However, if this Court decides that this matter should not be dismissed or stayed pursuant to the above-noted arbitration clause, this matter should still be dismissed or transferred due to improper venue.  Plaintiff originally filed suit in state court in Illinois, and the matter was subsequently removed to federal court based on diversity.  Illinois, however, is not the proper venue for this suit.  Indeed, the proper venue is the United States District Court for the Northern District of Texas. Accordingly, and in the alternative, Defendant requests that this matter be transferred to the U.S. District Court for the Northern District of Texas.

Courts may transfer cases "for the convenience of the parties and witnesses, in the interests of justice … to any other district or division where it might have been brought." 28 U.S.C. §1404(a) ("§1404(a)").    To prevail on a motion to transfer pursuant to 28 U.S.C. §1404(a), the party seeking transfer must establish that the "transferee forum is clearly more convenient." *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219-20 (7th Cir. 1986).  In making this determination, courts consider: (1) whether venue is proper in both the transferor and transferee court; (2) transfer is for the convenience of parties and witnesses; and (3) transfer serves the interest of justice. *See St. Paul Fire and Marine Ins. Co. v. Franklin Bank*, 2006 WL 3197727 at *2 (N.D. Ill. 2006).  Here, venue would be proper in the U.S. District Court for the Northern District Court of Texas as Defendant both resides there and a substantial part of the alleged events or omissions giving rise to

the Complaint occurred there. 28 U.S.C. §1391(c). In deciding the convenience prong, courts look at a variety of factors, including: (1) the plaintiff's choice of forum; (2) the situs of material events; (3) the relative ease of access to sources of proof; (4) the convenience of the witnesses; and (5) the convenience of the parties. *Id.* Here, the alleged breach occurred in Texas, the place of contracting was Texas, the sources of proof are stored in Texas, and the vast majority of witnesses are presumably located in Texas. *See* Linebarger Decl. ¶¶4-9. Thus, these factors clearly favor transfer.

Plaintiff brought suit in Illinois and he will likely argue that Texas is an inconvenient forum for him. However, any argument that Texas is inconvenient for Plaintiff is outweighed by the above factors and because Plaintiff: (1) signed an employment contract with a Texas choice of law clause (Linebarger Decl., Ex. 1, p.5);[3] and (2) he signed a Sales Compensation Agreement with a Dallas, Texas arbitration clause. Plaintiff should not be surprised that Defendant seeks to litigate this matter in Texas.

The arbitration provision in the Sales Compensation Plan specifically requires arbitration in Dallas, Texas for the resolution of any disputes. Thus, the U.S. District Court for the Northern District of Texas would have the power to compel arbitration in its District pursuant to 9 U.S.C. §4. Furthermore, Plaintiff's employment agreement contains a Texas choice-of-law provision, and Texas law will apply to this matter. Linebarger Decl. Ex. 1, p.5. This factor also militates toward transferring the matter to a

---

[3] With regard to applying choice-of-law provisions, in diversity cases, the Court applies the substantive law of the state in which it sits. *See, e.g., Erie R.R. Co. v.* Tompkins, 304 U.S. 64 (1938). Illinois courts enforce choice of law clauses so long as the law chosen is not "dangerous, inconvenient, immoral, []or contrary to public policy of Illinois. *Vencor, Inc. v. Webb*, 33 F.3d 840, 844 (7th Cir. 1994). Here, no claim can be made that Texas law flouts any Illinois public policy, and thus the choice-of-law provision is enforceable.

Texas forum.  *See St. Paul Fire and Marine Ins. Co.*, 2006 WL 3197727 at *4 (transferring case to Texas under §1404(a) and noting that "a federal judge sitting in Texas is more familiar with Texas law than is a federal judge sitting in Illinois").  Here, the balance firmly tips in the favor of transferring this matter to the U.S. District Court for the Northern District of Texas, and, in the event the Court declines to dismiss this matter for the reasons asserted *supra*, Defendant requests that this matter be transferred there under §1404(a).

**C.      In Any Event, Count III Must Be Dismissed Pursuant to
         Fed. R. Civ. P. 12(b)(6)**

Regardless of the forum or venue for Plaintiff's claims, Count III fails to state any claim under the law.  Specifically, Count III contains a claim under the Illinois Sales Representative Act.  Even if Illinois law applies here,[4] this Act is inapplicable to Parisi.  In Paragraph 5 of the Complaint, Parisi alleges that he was employed "as the Vice President of Worldwide Sales, responsible for managing Credant's sales representatives in the Company's worldwide territory" and later became "Vice President of North American Sales, responsible for managing Credant's sales representatives in the Company's North American territory."  Thus, on the face of the Complaint, it is obvious that Parisi was an employee of Credant responsible for managing sales representatives and not an independent contractor.

Under the Sales Representative Act, a "sales representative" is defined as "a person who is compensated, in whole or in part, by commission, *but shall not include …* one who qualifies as an employee of the principal pursuant to the Illinois Wage Payment

---

[4] Defendant disputes that Illinois law applies in light of the forum selection clause in Parisi's employment agreement and the arbitration provision of the Sales Compensation Plan.

and Collection Act." 820 ILCS 120/1(4) (emphasis added). The Illinois Wage Payment and Collection Act defines "employee" as follows:

> [A]ny individual permitted to work by an employer in an occupation, but shall not include any individual:
>
> (1) who has been and will continue to be free from control and direction over the performance of his work, both under his contract of service with his employer and in fact; and
>
> (2) who performs work which is either outside the usual course of business or is performed outside all of the places of business of the employer unless the employer is in the business of contracting with third parties for placement of employees; and
>
> (3) who is in an independently established trade, occupation, profession or business.

820 ILCS 115/2. In other words, *unless* Plaintiff was an *independent contractor*, the Sales Representative Act does not apply to him. *See, e.g., English Co. v. Northwest Envirocon, Inc.*, 278 Ill.App.3d 406, 413, 663 N.E.2d 448, 452 (2nd Dist. 1996) (the Sales Representative Act applies "to protect the same workers who, but for their status as *independent contractors*, would be protected by the [Wage Payment and] Collection Act.") (emphasis added). Here, Parisi has admitted in the Complaint that he was an employee and makes no claim that he was an independent contractor. Accordingly, Count III also must be dismissed for failure to state a claim.

## IV.    CONCLUSION

Plaintiff has agreed to have any claim "relating to or arising from" the 2006 Compensation Plan arbitrated pursuant to the arbitration provision of the Sales Compensation Plan. Since that provision provides for arbitration in a forum outside this District, Plaintiff's claim should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) and

12(b)(3).  In the event the Court declines to dismiss this case as requested above, venue should be transferred to the U.S. District Court for the Northern District of Texas pursuant to §1404(a).  Lastly, Count III should be dismissed for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  For all these reasons, Defendant respectfully requests that Plaintiff's Complaint be dismissed in its entirety.

Respectfully submitted,

Credant Technologies, Inc., *Defendant*

By:  s/ Michael D. Ray
     One of its Attorneys

Michael H. Cramer (IL ARDC No. 6199313)
Michael D. Ray ( IL ARDC No. 6285109)
OGLETREE, DEAKINS, NASH,
   SMOAK & STEWART, P.C.
Two First National Plaza
Twenty-Fifth Floor
20 South Clark Street
Chicago, Illinois 60603-1891
(312) 558-1220

August 5, 2008

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on August 5, 2008, he caused to be electronically filed the foregoing Memorandum of Law in Support of its Motion to Dismiss via the Court's ECF system.  Notice of this filing will be sent by operation of that system to:

> Karen P. Layng
> Angela Obloy
> Vedder Price, P.C.
> 222 N. LaSalle St.
> Chicago, IL 60601
> kplayng@vedderprice.com
> aobloy@vedderprice.com

s/  Michael D. Ray

6552854.1 (OGLETREE)

THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CARMEN PARISI., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CREDANT TECHNOLOGIES, INC. | ) | |
| | ) | Case No. 08CV03936 |
| Defendant. | ) | |
| | ) | Judge Lefkow |
| | ) | Magistrate Judge Mason |
| | ) | |
| | ) | |

**Declaration of Douglas A. Linebarger**

Now comes Douglas A. Linebarger who declares and affirms that the following information is true and correct to the best of his knowledge and belief.

1.    I am currently employed as General Counsel for Credant Technologies, Inc., which is located in Addison, Texas. I have held this position since January 2007.

2.    In my role as General Counsel, I was aware of Carmen Parisi's employment with Credant Technologies, Inc. and I am aware of the 2006 Sales Compensation Plan.

3.    Attached hereto as Exhibit 1 is a true and correct copy of Carmen Parisi's employment contract with Credant Technologies, Inc. This contract was entered into by Credant on April 13, 2003 at the Company's headquarters in Addison, Texas.

4.    On or about December of 2004, Credant Technologies entered into a software license agreement with Countrywide Home Loan. This contract was entered into by Credant at the Company's headquarters in Addison, Texas.

5.    On or about March of 2005, Credant Technologies entered into an agreement with CommonTime, Ltd. This contract was entered into by Credant at its headquarters in Addison, Texas.

6.      The sales records and other documents pertaining to the 2006 Sales Compensation Plan are stored at Credant's facility in Addison, Texas.

7.      The contracts and other documents pertaining to Credant's agreements with Countrywide Home Loan and CommonTime, Ltd. are stored at Credant's facility in Addison, Texas.

8.      The majority of the individuals responsible for administering the 2006 Sales Compensation Plan are employed and located at Credant's headquarters in Addison, Texas.

9.      Carmen Parisi attended Credant sales training and sales kickoff events in the Addison, Texas area.

I declare under the penalties of perjury that the foregoing is true and correct.


Dated: August 5, 2008


_____
Douglas A. Linebarger


6554039.1 (OGLETREE)



# CREDANT TECHNOLOGIES, INC.

## EMPLOYMENT, CONFIDENTIAL INFORMATION
## AND INVENTION ASSIGNMENT AGREEMENT

As a condition of my employment with Credant Technologies, Inc., a Delaware corporation, its subsidiaries, affiliates, successors or assigns (together, the **"Company"**), and in consideration of my further employment with the Company and my receipt of the compensation now and hereafter paid to me by Company and the Company's agreement in Section 2(a)(i), I agree to the following:

1.      **At-Will Employment**.  I UNDERSTAND AND ACKNOWLEDGE THAT MY EMPLOYMENT WITH THE COMPANY IS FOR AN UNSPECIFIED DURATION AND CONSTITUTES "AT-WILL" EMPLOYMENT.    I ALSO UNDERSTAND THAT ANY REPRESENTATION TO THE CONTRARY IS UNAUTHORIZED AND NOT VALID UNLESS OBTAINED IN WRITING AND SIGNED BY THE PRESIDENT OF THE COMPANY.  I ACKNOWLEDGE THAT THIS EMPLOYMENT RELATIONSHIP MAY BE TERMINATED AT ANY TIME, WITH OR WITHOUT GOOD CAUSE OR FOR ANY OR NO CAUSE, AT THE OPTION EITHER OF THE COMPANY OR MYSELF, WITH OR WITHOUT NOTICE.

2.      **Confidential Information**.

(a)      **Company Information**.

(i)      The Company agrees that upon the commencement of my employment, it will provide me with Confidential Information of the Company that will enable me to optimize the performance of my duties to the Company.  In exchange, I agree to use such Confidential Information solely for the Company's benefit.  The Company and I agree and acknowledge that its provision of such Confidential Information is not contingent on my continued employment with the Company.  Notwithstanding the preceding sentence, I agree that upon the termination of my employment in accordance with Section 1, the Company shall have no obligation to provide me with its Confidential Information.  I understand that **"Confidential Information"** means any Company proprietary information, technical data, trade secrets or know-how, including, but not limited to, research, product plans, products, services, customer lists and customers (including, but not limited to, customers of the Company on whom I called or with whom I became acquainted during the term of my employment), markets, software, developments, inventions, processes, formulas, technology, designs, drawings, engineering, hardware configuration information, marketing, finances or other business information disclosed to me by the Company either directly or indirectly in writing, orally or by drawings or observation of parts or equipment.  I further understand that Confidential Information does not include any of the foregoing items which has become publicly known and made generally available through no wrongful act of mine or of others who were under confidentiality obligations as to the item or items involved or improvements or new versions thereof.

(ii)      I agree at all times during the term of my employment and thereafter, to hold in strictest confidence, and not to use, except for the exclusive benefit of the Company, or to disclose to any person, firm or corporation without written authorization of the Board of Directors of the Company, any Confidential Information of the Company.



EXHIBIT

1

(b)    **Former Employer Information**. I agree that I will not, during my employment with the Company, improperly use or disclose any proprietary information or trade secrets of any former or concurrent employer or other person or entity and that I will not bring onto the premises of the Company any unpublished document or proprietary information belonging to any such employer, person or entity unless consented to in writing by such employer, person or entity.

(c)    **Third Party Information**. I recognize that the Company has received and in the future will receive from third parties their confidential or proprietary information subject to a duty on the Company's part to maintain the confidentiality of such information and to use it only for certain limited purposes. I agree to hold all such confidential or proprietary information in the strictest confidence and not to disclose it to any person, firm or corporation or to use it except as necessary in carrying out my work for the Company consistent with the Company's agreement with such third party.

3.    **Inventions**.

(a)    **Inventions Retained and Licensed**. I have attached hereto, as <u>Exhibit A</u>, a list describing all inventions, original works of authorship, developments, improvements, and trade secrets which were made by me prior to my employment with the Company (collectively referred to as **"Prior Inventions"**), which belong to me, which relate to the Company's proposed business, products or research and development, and which are not assigned to the Company hereunder; or, if no such list is attached, I represent that there are no such Prior Inventions. If in the course of my employment with the Company, I incorporate into a Company product, process or machine a Prior Invention owned by me or in which I have an interest, the Company is hereby granted and shall have a nonexclusive, royalty-free, irrevocable, perpetual, worldwide license to make, have made, modify, use and sell such Prior Invention as part of or in connection with such product, process or machine.

(b)    **Assignment of Inventions**. I agree that I will promptly make full written disclosure to the Company, will hold in trust for the sole right and benefit of the Company, and hereby assign to the Company, or its designee, all my right, title, and interest in and to any and all inventions, original works of authorship, developments, concepts, improvements, designs, discoveries, ideas, trademarks or trade secrets, whether or not patentable or registrable under copyright or similar laws, which I may solely or jointly conceive or develop or reduce to practice, or cause to be conceived or developed or reduced to practice, during the period of time I am in the employ of the Company (collectively referred to as **"Inventions"**), except as provided in Section 3(f) below. I further acknowledge that all original works of authorship which are made by me (solely or jointly with others) within the scope of and during the period of my employment with the Company and which are protectable by copyright are "works made for hire," as that term is defined in the United States Copyright Act. I understand and agree that the decision whether or not to commercialize or market any invention developed by me solely or jointly with others is within the Company's sole discretion and for the Company's sole benefit and that no royalty will be due to me as a result of the Company's efforts to commercialize or market any such invention.

(c)    **Inventions Assigned to the United States**. I agree to assign to the United States government all my right, title, and interest in and to any and all Inventions whenever such full title is required to be in the United States by a contract between the Company and the United States or any of its agencies.

(d)    **Maintenance of Records**. I agree to keep and maintain adequate and current written records of all Inventions made by me (solely or jointly with others) during the term of my employment with the Company. The records will be in the form of notes, sketches, drawings, and any other format that may be specified by the Company. The records will be available to and remain the sole property of the Company at all times.

(e)    **Patent and Copyright Registrations**. I agree to assist the Company, or its designee, at the Company's expense, in every proper way to secure the Company's rights in the Inventions and any copyrights, patents, mask work rights or other intellectual property rights relating thereto in any and all countries, including the disclosure to the Company of all pertinent information and data with respect thereto, the execution of all applications, specifications, oaths, assignments and all other instruments which the Company shall deem necessary in order to apply for and obtain such rights and in order to assign and convey to the Company, its successors, assigns, and nominees the sole and

exclusive rights, title and interest in and to such Inventions, and any copyrights, patents, mask work rights or other intellectual property rights relating thereto. I further agree that my obligation to execute or cause to be executed, when it is in my power to do so, any such instrument or papers shall continue after the termination of this Agreement. If the Company is unable because of my mental or physical incapacity or for any other reason to secure my signature to apply for or to pursue any application for any United States or foreign patents or copyright registrations covering Inventions or original works of authorship assigned to the Company as above, then I hereby irrevocably designate and appoint the Company and its duly authorized officers and agents as my agent and attorney in fact, to act for and in my behalf and stead to execute and file any such applications and to do all other lawfully permitted acts to further the prosecution and issuance of letters patent or copyright registrations thereon with the same legal force and effect as if executed by me.

(f) **Exception to Assignments**. I understand that the provisions of this Agreement requiring assignment of Inventions to the Company shall not apply to any invention that I have developed entirely on my own time without using the Company's equipment, supplies, facilities, trade secret information or Confidential Information except for those inventions that either (i) relate at the time of conception or reduction to practice of the invention to the Company's business, or actual or demonstrably anticipated research or development of the Company or (ii) result from any work that I performed for the Company. I will advise the Company promptly in writing of any inventions that I believe meet the foregoing criteria and not otherwise disclosed on Exhibit A.

4. **Conflicting Employment**. I agree that, during the term of my employment with the Company, I will not engage in any other employment, occupation, consulting or other business activity directly related to the business in which the Company is now involved or becomes involved during the term of my employment, nor will I engage in any other activities that conflict with my obligations to the Company.

5. **Returning Company Documents**. I agree that, at the time of leaving the employ of the Company, I will deliver to the Company (and will not keep in my possession, recreate or deliver to anyone else) any and all devices, records, data, notes, reports, proposals, lists, correspondence, specifications, drawings, blueprints, sketches, materials, equipment, other documents or property, or reproductions of any aforementioned items developed by me pursuant to my employment with the Company or otherwise belonging to the Company, its successors or assigns, including, without limitation, those records maintained pursuant to paragraph 3(d). In the event of the termination of my employment, I agree to sign and deliver the "Termination Certification" attached hereto as Exhibit B.

6. **Notification of New Employer**. In the event that I leave the employ of the Company, I hereby grant consent to notification by the Company to my new employer about my rights and obligations under this Agreement.

7. **Solicitation of Employees**. I agree that for a period of twelve (12) months immediately following the termination of my relationship with the Company for any reason, whether with or without good cause or for any or no cause, at the option either of the Company or myself, with or without notice, I shall not either directly or indirectly solicit, induce, recruit or encourage any of the Company's employees to leave their employment, or take away such employees, or attempt to solicit, induce, recruit, encourage or take away employees of the Company, either for myself or for any other person or entity.

8. **Interference with Business Relationships**. I agree that during the course of my employment and for twelve (12) months following the termination of my relationship with the Company for any reason, whether with or without good cause or for any or no cause, at the option either of the Company or myself, with or without notice, I will not, without the prior written consent of the Company, either for myself or as a partner, employee, consultant, officer, director, manager, agent, associate, investor, or otherwise, directly or indirectly, solicit any of the Company's existing customers, suppliers, partners or clients (or any of its existing prospects for customers, suppliers, partners or clients) or otherwise encourage, induce or recruit any such parties to discontinue doing business with, or not enter into business relationships with, the Company.

9.    <u>Covenant Not to Compete</u>.

(a)    I agree that during the course of my employment and for twelve (12) months following the termination of my relationship with the Company for any reason, whether with or without good cause or for any or no cause, at the option either of the Company or myself, with or without notice, I will not compete, without the prior written consent of the Company, as a partner, employee, consultant, officer, director, manager, agent, associate, investor, or otherwise, directly or indirectly, own, purchase, organize or take preparatory steps for the organization of, build, design, finance, acquire, lease, operate, manage, invest in, work or consult for or otherwise affiliate myself with any business, in competition with the Company's business.  The foregoing covenant shall cover my activities in every part of the Territory in which I may conduct business during the term of such covenant as set forth above.  "**Territory**" shall mean (i) all counties in the State of Texas, (ii) all other states of the United States of America and (iii) all other countries of the world; provided that, with respect to clauses (ii) and (iii), the Company derives at least five percent (5%) of its gross revenues from such geographic area prior to the date of the termination of my relationship with the Company.

(b)    I acknowledge that I will derive significant value from the Company's agreement in Section 2(a)(i) to provide me with that Confidential Information of the Company to enable me to optimize the performance of my duties to the Company.  I further acknowledge that my fulfillment of the obligations contained in this Agreement, including, but not limited to, my obligation neither to disclose nor to use the Company's Confidential Information other than for the Company's exclusive benefit and my obligation not to compete contained in subsection (a) above, is necessary to protect the Company's Confidential Information and, consequently, to preserve the value and goodwill of the Company.  I further acknowledge the time, geographic and scope limitations of my obligations under subsection (a) above are reasonable, especially in light of the Company's desire to protect its Confidential Information, and that I will not be precluded from gainful employment if I am obligated not to compete with the Company during the period and within the Territory as described above.

(c)    The covenants contained in subsection (a) above shall be construed as a series of separate covenants, one for each city, county and state of any geographic area in the Territory.  Except for geographic coverage, each such separate covenant shall be deemed identical in terms to the covenant contained in subsection (a) above.  If, in any judicial proceeding, a court refuses to enforce any of such separate covenants (or any part thereof), then such unenforceable covenant (or such part) shall be eliminated from this Agreement to the extent necessary to permit the remaining separate covenants (or portions thereof) to be enforced.  In the event the provisions of subsection (a) above are deemed to exceed the time, geographic or scope limitations permitted by Texas law, then such provisions shall be reformed to the maximum time, geographic or scope limitations, as the case may be, then permitted by such law.

10.    <u>Representations</u>.  I agree to execute any proper oath or verify any proper document required to carry out the terms of this Agreement.  I represent that my performance of all the terms of this Agreement will not breach any agreement to keep in confidence proprietary information acquired by me in confidence or in trust prior to my employment by the Company.  I have not entered into, and I agree I will not enter into, any oral or written agreement in conflict herewith.

11.    <u>Arbitration and Equitable Relief</u>.

(a)    <u>Arbitration</u>.  Except as provided in subsection (b) below, I agree that any dispute or controversy arising out of or relating to any interpretation, construction, performance or breach of this Agreement, shall be settled by arbitration to be held in Austin, Texas in accordance with the rules then in effect of the American Arbitration Association.  The arbitrator may grant injunctions or other relief in such dispute or controversy.  The decision of the arbitrator shall be final, conclusive and binding on the parties to the arbitration.  Judgement may be entered on the arbitrator's decision in any court having jurisdiction.  The Company and I shall each pay one-half of the costs and expenses of such arbitration, and each of us shall separately pay our counsel fees and expenses.

(b)    <u>Equitable Remedies</u>.  I agree that it would be impossible or inadequate to measure and calculate the Company's damages from any breach of the covenants set forth in Sections 2, 3, 5, 7 and, 8 herein.  Accordingly, I agree that if I breach any of such Sections, the Company will have available, in addition to any other right or remedy available, the right to obtain an injunction from a court of competent jurisdiction restraining such breach or

threatened breach and to specific performance of any such provision of this Agreement. I further agree that no bond or other security shall be required in obtaining such equitable relief and I hereby consent to the issuance of such injunction and to the ordering of specific performance.

12.    **General Provisions**.

(a)    **Governing Law; Consent to Personal Jurisdiction**.  THIS AGREEMENT WILL BE GOVERNED BY THE LAWS OF THE STATE OF TEXAS WITHOUT REGARD FOR CONFLICTS OF LAWS PRINCIPLES. I HEREBY EXPRESSLY CONSENT TO THE PERSONAL JURISDICTION OF THE STATE AND FEDERAL COURTS LOCATED IN TEXAS FOR ANY LAWSUIT FILED THERE AGAINST ME BY THE COMPANY ARISING FROM OR RELATING TO THIS AGREEMENT.

(b)    **Entire Agreement**.  This Agreement sets forth the entire agreement and understanding between the Company and me relating to the subject matter herein and supersedes all prior discussions between us. No modification of or amendment to this Agreement, nor any waiver of any rights under this agreement, will be effective unless in writing signed by the party to be charged.  Any subsequent change or changes in my duties, salary or compensation will not affect the validity or scope of this Agreement.

(c)    **Severability**.  If one or more of the provisions in this Agreement are deemed void by law, including, but not limited to the covenant not to compete in Section 8, then the remaining provisions will continue in full force and effect.

(d)    **Successors and Assigns**.  This Agreement will be binding upon my heirs, executors, administrators and other legal representatives and will be for the benefit of the Company, its successors, and its assigns.

(e)    **Construction**.  The language used in this Agreement will be deemed to be the language chosen by the parties to express their mutual intent and no rules of strict construction will be applied against either party.

(f)    **Counterparts**.  This Agreement may be executed in any number of counterparts, each of which shall be enforceable, and all of which together shall constitute one agreement.

13.    I acknowledge and agree to each of the following items:

(a)    I am executing this Agreement voluntarily and without any duress or undue influence by the Company or anyone else; and

(b)    I have carefully read this Agreement. I have asked any questions needed for me to understand the terms, consequences and binding effect of this Agreement and fully understand them; and

(c)    I sought the advice of an attorney of my choice if I wanted to before signing this Agreement.

**[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]**

IN WITNESS WHEREOF, the parties have executed this Agreement on this _16th_ day of _April_ , _2003_ ; provided, however, that the Company executed this Agreement solely for the purpose of entering into the covenants contained in Section 2(a)(i).

CREDANT TECHNOLOGIES, INC.

By: _____

Its: _VP, Operations_____

"Employee"

_CP Parisi_____
(Signature)

_CARMEN P. PARISI_____
(Print Name)

CREDANT TECHNOLOGIES, INC. EMPLOYMENT, CONFIDENTIAL INFORMATION, AND
INVENTION ASSIGNMENT AGREEMENT SIGNATURE PAGE

# EXHIBIT A

## LIST OF PRIOR INVENTIONS
## AND ORIGINAL WORKS OF AUTHORSHIP

| Title | Date | Identifying Number or Brief Description |
| --- | --- | --- |
| | | |

\_\_\_\_     No inventions or improvements

\_\_\_\_     Additional Sheets Attached

Signature of Employee:_____

Print Name of Employee:_____

Date:_____